IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1903.

---

### R. H. SHIELDS *v.* R. A. MCMAHAN.

*(Knoxville.* September Term, 1903.)

1. **TRANSCRIPT OF RECORD.** Copies, if no agreement or order of court for originals to be sent up, are sufficient.

   The transcript of the record for review in the supreme court is not defective because of the absence of papers, namely, the original ballots in a contested election case, where certified copies thereof are in the transcript, in the absence of an agreement of the parties or an order of the trial court that such original papers be sent up to the supreme court. (*Post, p. 4.*)

Shields v. McMahan.

2. **JURY.** None in contested election suit over office of sheriff.

In contested election suit over the office of sheriff, it is the province of the circuit judge to hear and determine the controversy, and neither party is entitled to a jury. (*Post, pp.* 4, 5.)

Cases cited and approved: Blackburn v. Vick, 2 Heis., 377-383; Moore v. Sharp, 98 Tenn., 491.

3. **CONTESTED ELECTION.** Case heard de novo upon record in supreme court.

The contest over the election of a sheriff is to be tried in the supreme court as an equity case *de novo* upon the assignments of errors made, and the findings of the circuit judge on questions of the fact are not conclusive. (*Post, pp.* 4, 5.)

Case cited and approved. Moore v. Sharp, 98 Tenn., 493.

4. **SAME.** Votes cast for one and returned for another properly counted by court; case in judgment.

Where, in a contested election case over the office of sheriff involving the election in a certain district, in which the uncontradicted evidence shows that 53 votes were cast for the contestant, while only 26 were returned for him; and 123 votes were cast for a third candidate, while only 79 were returned for him, but there is no evidence, except the face of the returns, that contestee received 191 votes, or any other number, and it is evident that the votes not counted and returned for contestant and the third candidate were counted and returned for the contestee, and by taking that number from his returned votes and by adding the 27 votes cast but not counted for contestant to his returned votes, it is found that contestant has a plurality of votes in the county, he will be declared to have been elected sheriff, and the fact will be so certified. (*Post, pp.* 3-7.)

FROM SEVIER.

Appeal from the Circuit Court of Sevier County.—G. Mc. HENDERSON, Judge.

J. R. PENLAND, for Shields.

ZIRKLE & MCMAHAN, for McMahan.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a contest over the election of a sheriff for Sevier county.

The trial judge heard the case upon its merits, and denied the contestant's claim, and dismissed his suit, at his costs, and he has appealed.

The contest in this case is confined to narrow limits; there being no question made in regard to the election, except in district No. 1.

It is not charged that there was any fraudulent or illegal voting in that district, but that through the fraudulent manipulation of the officer holding the election the vote was not returned as it was cast.

The specific charge is that in this district 53 votes were cast for Shields, whereas only 26 were counted for him, and 123 votes were cast for Baxter, the third candidate, but only 79 were returned for him, but these ballots not counted for Shields and Baxter were fraudulently counted for McMahan. The total vote of the county, as shown by the returns, is: For McMahan, 1,519 votes; for Shields, 1,495 votes; for Baxter, 770 votes—showing a plurality on the face of the returns in favor of McMahan of 24 votes over Shields, the contestant, in the county.

In the controverted first district the returns show the vote to be: McMahan, 191 votes; Shields, 26 votes; Baxter, 79 votes—total, 296 votes.

A preliminary question is raised by the contestee, and on it he based a motion to affirm the judgment of the trial judge. This is that the transcript is imperfect. In the court below certain ballots were introduced as evidence and produced before the trial judge, to show from their faces uniformity of writing and other evidences that they were not genuine ballots. The contention is that these original ballots should have been sent up to this court in order that it might the more readily and reliably pass upon the question of their genuineness, whereas they were simply copied into the record.

As a general rule original papers are not sent to this court upon review but they may be brought up by agreement of parties or by order of the trial court, when the issues involved make it necessary or desirable to use the originals, instead of copies certified by the clerk. We do not find that there was any agreement of counsel or order of the court in this case that these original ballots might be sent up to this court, and in the absence of such agreement or order it was proper to send copies; and the record is complete with such copies, and is not defective because of the absence of the originals.

In the first place we proceed to inquire whether it was the province of the judge to try the cause in the court below, or was either party entitled to a jury. The defendant demanded a jury, and it was denied by the court.

We are of the opinion that it was the province of the judge to hear and determine the controversy, and neither party was entitled to demand a jury.   6 Am. and Eng. Ency. Law (2 Ed.), p. 982; 7 Ency. of Plead. and Prac. p. 393, b; M'cCrary on Elections (4 Ed.), sections 391, 392.

And such has been the practice in this State.   *Moore* v. *Sharp,* 98 Tenn., 491, 41 S. W., 587; *Blackburn* v. *Vick,* 2 Heisk., 377, 383.

The next question that arises is what is the force and effect of the judgment of the trial judge.   Is it conclusive, if there is any evidence to support it; or is the case to be tried in this court *de novo,* and determined by the weight of the evidence?

Whatever may be the rule adopted elsewhere, the practice in this State has been followed in a number of cases and laid down in the case of *Moore* v. *Sharp,* 98 Tenn., 493, 41 S. W., 587, that a contest over the election of a sheriff is to be tried in this court as an equity case *de novo,* where the findings of the circuit judge on questions of fact are not conclusive.

In the present case there is a general finding by the trial judge that the contestant has not made out his case, and there are no findings of evidentiary facts.

It is evident that if the same rule applies to the finding facts by the trial judge that does in other civil cases, to wit, such finding is conclusive, if there is any evidence to support it, and there can be no reversal, and practically no review, where the decision of the court be-

low was in favor of the contestee, since he would always come into this court with the certificate of election, which is not only some evidence to support the finding of the trial judge, but is prima facie evidence of the justice of the claim of the contestee.

If it be argued that this certificate could be impeached still that goes only to the weight to be given to it, and not to its admissibility as evidence, and leaves it still some evidence to sustain the findings of the lower court.

We are of opinion, therefore, following our own precedents, that the cause stands like an equity case in this court for trial *de novo* upon the assignments made.

Coming to the merits of the case: There is proof, not contradicted, that in district No. 1, 53 votes were cast for Shields, names given, while only 26 were returned; and 123 votes were cast for Baxter, while 79 were returned. There is no evidence, except the face of the returns, that McMahan received 191 votes, or any other number. It is evident, if there were 27 votes for Shields that were not returned for him, and 44 votes for Baxter that were not returned for him, these votes must have been included in the 191 votes returned for McMahan, There is no evidence to the contrary. There is no evidence to show how many votes McMahan did receive, if the returns be impeached and excluded. If the votes should be corrected according to the evidence in the record, the result would be to increase Shields' vote by 27, and to decrease McMahan's 71 votes; and the net result would be, in that district, McMahan 120 votes, Shields 53

Shields v. McMahan.

votes, and Baxter 123 votes; and the net result in the county would be a plurality for Shields of 74 votes.

We are of opinion that contestant has made out a clear case of a fraudulent return of the vote of this district; that he has shown the number of votes and the names of the voters which were withheld from him and given to his opponent; and that he has furnished the data necessary to purge the returns of the illegal votes and leave no doubt as to the result when the legal votes alone are counted and returned. In such case it is the duty of the court to cast out the votes illegally returned and declare the result of the votes legally cast, and, when proper and sufficient data is furnished for the purpose, both in the pleadings and proof, and the election is not otherwise assailed, but conceded to be correct, it only remains to declare the result as shown by the proof, which is that the contestant, Shields, received of the legal votes cast in the county a plurality of 74 votes over contestee, McMahan, and was therefore elected sheriff of Sevier county; and the fact will be so certified, and the contestee will pay the costs of suit.