James R. CORDELL, Jr., a minor by next friend and father, James R. Cordell, Sr., and James R. Cordell, Sr., Individually, Plaintiffs-Appellants,

v.

WARD SCHOOL BUS MANUFACTURING, INC., Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

Feb. 20, 1980.

Certiorari Denied by Supreme Court April 21, 1980.

James F. Schaeffer, Charles R. Perkins, Memphis, for plaintiffs-appellants.

John H. Harris, Jr., William W. Dunlap, Memphis, for defendant-appellee.

EWELL, Judge.

This is an appeal by plaintiffs below from a jury verdict in an action based solely on the theory of strict liability in tort.

The suit was filed by James R. Cordell Jr. by his next friend and father, James R. Cordell Sr., and by James R. Cordell Sr., individually, seeking to recover damages for personal injuries suffered by James R. Cordell Jr. when he fell or jumped from a school bus designed, manufactured and sold by the defendant, Ward School Bus Manufacturing, Inc. The plaintiffs claimed that the design of the main entry door opening mechanism on the bus was defective and unreasonably dangerous to its users. Defendant denied the design was defective and interposed the defenses of assumption of risk and abnormal use of the product. Following trial to a jury, a verdict was returned for the defendant. The Trial Court overruled plaintiffs' motion for a new trial, and this appeal has been properly perfected presenting three issues:

(1) The instructions given by the Court below dealing with the required elements of proof were fundamentally erroneous.

(2) The Court below erred in instructing the jury that the affirmative defense of "assumption of the risk" was an issue in the case.

(3) The Court below improperly restricted relevant evidence offered on behalf of plaintiffs.

In the first issue plaintiffs complain of the portion of the Trial Judge's charge dealing with the doctrine of strict liability in tort. The Judge charged the jury as follows:

The Court charges you that the fact that an injury occurred does not itself prove that the door opening control was defectively designed and unreasonably dangerous, but the Court will instruct you at this time as to the elements of the doctrine of strict liability upon which the plaintiffs rely.

The manufacturer of a product who places on the market for use under cir-

cumstances *where he knows that such product will be used without inspection for defects in the mechanism or design which is claimed to have been defective* is liable for injuries proximately caused by defects in the manufacture or design of the product which caused it to be unreasonably dangerous for its intended use, provided the product was being used for the purpose for which it was designed and intended to be used and was not substantially changed from the way it was made.

A product is unreasonably dangerous if it is dangerous to the extent beyond which would be contemplated by the ordinary consumer who purchases with the ordinary knowledge common to the community as to its characteristics.

Plaintiff has the burden of proving by the preponderance of the evidence, all of facts necessary to establish each element of strict liability.

The doctrine of strict liability has been adopted in the State of Tennessee and is stated as follows:

One who sells any product in a defective condition, unreasonably dangerous to the user or consumer, or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

This rule applies although the seller has exercised all possible care in the preparation and sale of the product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The basis of liability in products liability cases is putting into the stream of commerce a defective or unreasonably dangerous product. Liability is not based on ordinary negligence, and for that reason, the contributory negligence of a plaintiff is no defense, but it is based on the consideration of protecting the public from such product.

Strict liability does not mean absolute liability. A manufacturer is not an insurer of the product he designs and it is not required that the design adopted be perfect or render the product accident proof or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in that product.

It is necessary for the plaintiff to establish that the product was unreasonably dangerous or that the design was defective in some fashion, and that the defect was the proximate cause of the accident.

The mere fact that the product is to undergo processing or substantial change will not relieve the manufacturer of liability if the product was defective when it left his hands unless there is an intervening, independent negligence which caused the accident.

The test in these cases is foreseeability. If the use if unforeseeable, the defendant is not liable under the theory of strict liability, since the cause of the harm will be in the misuse of the product rather than any defect in design; but where the use could be reasonably anticipated or foreseen, the jury may find that the manufacturer reasonably could and should have anticipated this use. (Emphasis added)

■ It is argued on behalf of the plaintiffs that in the emphasized portion of the charge the jury was informed that before a manufacturer can be held liable under the strict liability theory, it must appear that the product is one marketed under circumstances that no inspection of same will be carried out by the purchaser or consumer; and it is insisted that this is not a correct statement of the law. While we do not agree that the effect of the charge is as insisted by plaintiffs, we do observe that it is not a condition precedent to liability that a manufacturer know that the product will be used without inspection for defects in the mechanism or design which is claimed to be defective.

■ Tennessee has adopted the strict liability rule set forth in *Restatement (Second) of Torts*, Sec. 402A (1965). *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516 (Tenn.1973). The text of Section 402A is:

402A Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractural relation with the seller.

All of the foregoing is included in the above quoted portion of the charge.

The record reflects that immediately after the Trial Judge completed the charge and before the jury had retired to the jury room the following occurred:

"[THE COURT] Now, Gentlemen, could I see you just a moment?

---

(The following occurred around the Bench:)

MR. SCHAEFFER: We don't have anything.

MR. HARRIS: The only thing we have, I think a couple of times you said defectively designed or unreasonably dangerous instead of "and".

MR. DUNLAP: It would be defectively designed and unreasonably dangerous.

THE COURT: I will be glad to make that correction.

MR. HARRIS: Defectively designed and unreasonably dangerous.

THE COURT: Anything further?

MR. HARRIS: No, sir.

(The following occurred in open court:)

---

THE COURT: Ladies and Gentlemen, the attorneys mentioned to the Court that I may have, at some time during the charge, used the expression, "If you find the product was defectively designed or unreasonably dangerous," and the Court instructs you, if I used the word "or" there, it should have been "and". If you find it was defectively designed and unreasonably dangerous, and I make that correction to you at this time, and you are to consider all of those statements to have been made in that manner.

Is there anything further at this time?

MR. SCHAEFFER: No, your honor."

■ In this State there is a rule established by numerous cases that it is the duty of counsel by suggestion or special request to bring to the attention of the Trial Judge any amplification of his charge, or if the language be equivocal to ask for removal of the doubt by proper instructions. *Management Services v. Hellman*, 40 Tenn.App. 127, 289 S.W.2d 711 (1955). There is no record of counsel for plaintiffs having done so. Where counsel fails to do so, this Court will not reverse unless convinced that the party complaining was prejudiced by such instructions, or that justice is about to miscarry. *Carney v. Cook*, 158 Tenn. 333, 13 S.W.2d 322 (1929).

■ Considering the charge as a whole together with the proof in the case we are satisfied that the inclusion of the objectionable statement in the charge was harmless error at most. The only testimony with regard to inspection was from plaintiffs' witnesses, Horace Colvett and Owen S. Collins. Colvett was responsible for the inspection of school buses in West Tennessee. He testified that at the time of the Memphis inspection involving this bus there were no trained inspectors and the check

list did not include an item on the door opening mechanism. Collins was the individual who inspected this particular bus in 1973. He testified that he was not trained, was not familiar with the minimum standards and did not inspect the door opening mechanism.

It does not affirmatively appear that the error complained of has affected the results of the trial; and we, therefore, cannot set aside the verdict and judgment thereon and grant a new trial on the merits of this issue. T.C.A. 27–117 and Rule 36, Tennessee Rules of Appellate Procedure.

In the second issue presented by plaintiffs they complain that the Trial Court erred in instructing the jury with respect to the affirmative defense of assumption of risk. No such error was included in plaintiffs' motion for a new trial, as amended. This issue therefore cannot be considered. Rules of the Court of Appeals, rule 12(6); *Hood v. Waldrum*, 58 Tenn.App. 512, 434 S.W.2d 94 (1968).

The third issue on appeal is to the effect that the Trial Court erred in excluding from consideration by the jury the testimony of Ronald C. Williams offered as a witness for plaintiffs. The testimony of Williams heard outside the presence of the jury is included in the record and reflects that for twenty-four years he had been employed by Memphis Transit Authority in body maintenance. All buses of Memphis Transit Authority had doors operated by a power mechanism in contrast to defendant's bus involved in the accident, and plaintiffs sought to have Williams testify with respect to this fact and his experience with the power mechanism from the standpoint of maintenance. The Trial Judge held that Williams was not qualified to testify as an expert witness in the area of design of door opening controls on buses.

Plaintiffs were permitted to present to the jury proof of the same or similar nature through the following witnesses:

(1) Vernon Davis, driver of the school bus in question on the date of the accident and at the time of trial driver for Memphis Transit Authority.

(2) E. O. Ryan, chief engineer for defendant since 1952 who testified as to options offered by defendant including a power door opening mechanism and a catch latch, neither of which were on the bus in question.

(3) Charles David Ward, chief executive officer of defendant.

(4) Kenneth H. Hall, professor of civil engineering at Memphis State University since 1970 who specializes in the field of transportation as it relates to civil engineering and who at the time of trial was involved in development of a vehicle inspection program for the State of Tennessee.

(5) Dr. John Ray, Chairman of the Department of Mechanical Engineering at Memphis State University who holds a doctorial degree in mechanical engineering from the University of Oklahoma. Dr. Ray conducted tests on the bus in question and on other buses produced by defendant; inspected buses manufactured by Thomas Company and by Wayne; and demonstrated a latch catch designed by him.

(6) Paul Tutt, graduate civil engineer with advanced degrees in education who has worked with the Texas Highway Department as safety engineer and has worked with problems involving school buses. At the time of trial he was working in Tennessee with the Governor's Highway Safety Program.

The foregoing witnesses were permitted to testify with respect to the matters within the knowledge of Williams. His testimony for the most part would have been cumulative; and it does not affirmatively appear that the allowing of his testimony would have affected the results of the trial. T.C.A. 27–117 and Rule 36, Tennessee Rules of Appellate Procedure.

Further, the Trial Judge, after a full examination of this witness in the absence of the jury, concluded that he was not properly qualified and did not have sufficient experience or familiarity in the matters in question to qualify as an expert

witness. The Trial Judge has very broad discretion in the conduct of the trial and in dealing with the qualification and admission of the testimony of expert witnesses. *Shelby County v. Barden*, 527 S.W.2d 124 (Tenn.1975). We find no error in his ruling with regard to this testimony.

Accordingly, we find and hold that the Trial Judge did not commit reversible error with respect to any of the three issues on appeal. The verdict of the jury and the judgment of the Trial Court thereon are affirmed and the suit dismissed. The costs on appeal are assessed against the plaintiffs-appellants.

NEARN and SUMMERS, JJ., concur.