IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

June 4, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

TERRI G. BOWERS,                    )    C/A NO.  03A01-9701-CV-00008
                                    )
        Plaintiff-Appellant,        )    KNOX LAW
                                    )
v.                                  )    HON.  BILL SWANN,
                                    )    JUDGE
FREDERICK ALLAN BOWERS,             )
                                    )    AFFIRMED AS MODIFIED
        Defendant-Appellee.         )    AND REMANDED


L. CAESAR STAIR, III, BERNSTEIN, STAIR & McADAMS, and
ELIZABETH K. B. MEADOWS, SCHMID, JONES & MEADOWS, PLLC,
Knoxville, for Plaintiff-Appellant.

ROBERT R. SIMPSON and JAMES H. VARNER, JR., ESHBAUGH, SIMPSON
AND VARNER, Knoxville, for Defendant-Appellee.


O P I N I O N

Franks. J.


        In this custody dispute, the Trial Judge granted custody of the parties' child to the father, and the mother has appealed.

        Terri Bowers and Frederick Bowers were divorced in Kentucky in 1992. They agreed to joint custody of their then three year old daughter, Chelsea, with primary residence with the mother. The father, who had moved to Oklahoma City, had visitation one out of every five weeks, with additional time on holidays and during summer.

        Mother, then moved to Knoxville, and she has testified that the child experienced behavioral changes, such

as becoming listless, clinging to her mother, wetting, and parroting whomever she was speaking with, following the father's visitation periods. The mother domesticated the Kentucky divorce decree and filed a petition in Juvenile Court to have custody changed to her and visitation with the father suspended. The Juvenile Court awarded temporary custody to the mother and limited the father's visitation to an unspecified amount of time in Knoxville as ?agreed to? by the Tennessee Department of Human Services, the father, the mother, and the child's therapist. Those visits that were allowed were to be supervised by the Tennessee Department of Human Services.

Ultimately, the father appealed the Juvenile Court's action to the Circuit Court, where the Circuit Court granted sole custody of the child to the father. The basis of the Trial Judge's decision was his finding that the father had been and would continue to encourage the child to maintain a loving relationship with both sides of the family, while the mother seemed intent on excluding father and his family from the child's life. The Court awarded substantial visitation to the mother, including the first and third weekend of every month, each spring break, Thanksgiving and Christmas, and sixty consecutive days in the summer.

The mother insists the Court erred in granting custody to the father. Where it is demonstrated that an existing joint custodial arrangement is not in the best interest of the child, it is appropriate for the Court to alter the custody arrangement established in the original decree. *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. App.

2

1993). The decision of the Trial Judge regarding custody is accompanied by a presumption of correctness unless the record preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990).

The father and his mother testified that the mother was continually attempting to shut them out of the child's life. The mother's testimony shows that she made little effort to put the child at ease regarding her parents' relationship. The mother never initiated discussions regarding the father and never suggested that the child call her father. This silence confused the child, who was unsure whether to show affection and to whom when both parents were in the same room. These matters would be significant even without the campaign waged by mother, to characterize the father as ?abusive.?[1] In contrast, the evidence supports the court's finding that the father has encouraged the child to show affection to her mother and has attempted to maintain a working relationship with the mother's family.

---

[1] The trial court credited testimony that mother's sister and attorney, Linda Welch, had stated that she would ?break him? in juvenile court. Appellant argues that the trial court erred in refusing to allow Ms. Welch to testify and refute this statement. It is first noted that Ms. Welch was given a chance to testify and decided not to, then came back later and asked to take the stand. Even if the Trial Court should have let her testify at this point, it would be harmless error. The alleged statement is not determinative to the finding that mother tried to exclude the father and his family from her child's life.

The actions of the mother in attempting to have the father characterized as 'neglectful' are much more significant in this regard, although we note that we do not agree with Appellant's additional argument that she is being punished for pursuing such charges. While a review of the statutory definitions of ?abuse? and ?dependent and neglected child,? in T.C.A. § 37-1-102(b)(1) and (12) demonstrates that they are meant to apply to cases where substantially more significant harm is being inflicted by a parent, the trial court does not appear to have made this issue determinative in the custody decision. We note that there were numerous items weighed and considered in his opinion and think it is fairer to characterize the juvenile court proceedings merely as evidence of the considerable animosity felt by the mother towards the father.

Taking into account this determination, along with the testimony of numerous psychologists and neighbors regarding the close relationship of the child with both parents, the evidence does not preponderate against the custody decision made by the Trial Court. T.R.A.P. Rule 13(d).

The mother also argues that the Trial Court erred in hearing the matter when the juvenile court order was not final, requiring the parties to present their case on a ?witness by witness? basis, and ordering the trial to go forward on an expedited basis.

The order in Juvenile Court was final except for the determination of guardian ad litem fees, pursuant to T.R.C.P. Rule 54.02 and T.R.A.P. Rule 3. *See generally Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983). The setting of fees cannot be said to affect the merits of the case and for the purposes of appeal in the Circuit Court, the juvenile court order was final. *See Saunders v. Metropolitan Gov't of Nashville*, 214 Tenn. 703, 383 S.W.2d 28 (Tenn. 1964).

The matter of establishing the order of proof is within the Trial Court's sound discretion and will be reversed only when the trial judge has abused that discretion and where it can demonstrated that the error has affected the substantial rights of one or both parties. *Castelli v. Lien*, 910 S.W.2d 420 (Tenn. App. 1995). The mother was allowed to present all of her non-cumulative witnesses. *See Cordell v. Ward School Bus Mfg., Inc.*, 597 S.W.2d 323 (Tenn. App. 1980); *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68 (Tenn. App. 1990). Two duplicative witnesses had their testimony stipulated to

4

and we do not find an abuse of discretion effecting the mother's substantive rights.

Regarding the expedited trial, the mother's attorney was not able to attend the hearing where the date was set. She filed a motion requesting that the Court reconsider the date, which was denied. She states that she was therefore deprived of sufficient time to complete discovery. However, the Trial Court's decision to set the date was constrained by T.C.A. § 37-1-159, which requires that appeals from a parent's loss of custody be heard within forty-five days. In addition, the mother had not filed any motions to compel discovery or take other actions which would indicate that the early trial date affected and prejudiced the presentation of her case. This issue we conclude is without merit.

The remaining issue for consideration is whether the Trial Court erred in allowing the mother to offset her child support payments with the cost of transportation for visitation. The Trial Court adopting the determinations of a Referee, set the mother's child support obligation at $894.00 per month, out of her monthly income of $6,055.00. Given that visitation was granted for 37 days above the average number used in the guidelines, her monthly obligation was reduced to $778.71. Because of mother's testimony that travel expenses[2] for visitation would exceed her annual child support obligation, the trial court ordered that the mother could deduct her visitation expenses from the child support obligation. This would effectively negate any child support

_____

[2] In its order determining custody, the Trial Court ordered that all transportation arrangements and costs be borne by the mother.

5

payments by the mother.

The circumstances in which downward deviations are appropriate from the child support guidelines, are limited. *See Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996). While the list set forth in *Jones* is not exclusive, it gives a ?powerful indication? of the types of situations in which the guidelines allow deviation downward. *Id.*

Clearly, the reduction in support to account for the mother's above average visitation is allowed under the guidelines. Tenn. Comp. R. &Regs., Ch. 1240-2-4-.04(2)(b). The reduction to offset transportation costs, however, is not analogous to the situations in *Jones*. Accordingly, we do not believe it is appropriate to further reduce the child support payments based upon travel expenses.

However, this case presents a large disparity in the parties' income. The father, a physician, earns approximately $430,000.00 per year. The mother, a nurse anesthetist, earns approximately $72,000.00 per year. In this case, the mother may spend half of her income in supporting and visiting with her child. Assigning travel expenses for visitation is an issue on which the relative financial resources of the parties may be considered. *Dodd v. Dodd*, 737 S.W.2d 286, 292 (Tenn.App. 1987); *Reznicek v. Reznicek*, 1991 WL 156407 (Tenn.App. 1991). It is in the child's best interest that she spend time with her respective parents, and we conclude under all of the circumstances that it is appropriate for the father to defray the travel and lodging expenses of the mother when visiting the child in Oklahoma. Accordingly, the judgment of the Trial Court will be modified to require the

6

mother to pay the child support of $778.71. However, the father will reimburse on a monthly basis, the mother for her travel and lodging expenses in connection with child visitation, in accordance with the guidelines established by the Referee and the Trial Judge as to the reasonableness of the cost of travel and lodging.

The judgment of the Trial Court is affirmed, as modified, and the cost of the appeal is assessed one-half to each party.

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.



_____
Don T. McMurray, J.

7

FILED

June 4, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

TERRI G. BOWERS,               ) C/A NO.  03A01-9701-CV-00008
                               )
        Plaintiff-Appellant,   ) KNOX LAW
                               )
v.                             )
                               )
FREDERICK ALLAN BOWERS,        )
                               )
        Defendant-Appellee.    )

_____ O R D E R

        This cause was regularly heard and considered by the
court.  IT IS NOW ORDERED that the judgment of the Trial Court
is affirmed, as modified, and the cause remanded.  The costs
of appeal are adjudged one-half to each party, for which
execution may issue if necessary.

                        PER CURIUM